J. F. GARRETT, *Appellant,* v. NESPELEM CONSOLIDATED MINES, INC., *Respondent.*[1]

*Frederick R. Burch* and *John Hancock,* for appellant.

*Funkhouser & Twohy,* for respondent.

MILLARD, J.—November 24, 1939, plaintiff brought an action to recover against defendant, a domestic corporation, for services rendered as caretaker of defendant's property and prayed that, as defendant was insolvent, a receiver be appointed for it. An order was entered appointing a receiver (who duly qualified) for the corporation.

On June 17, 1940, the receiver, with the approval of the Spokane county superior court, entered into a written agreement with plaintiff under which the latter was obligated to do the annual assessment work on the mine claims of defendant for six thousand shares of the treasury stock

[1]Reported in 162 P. (2d) 591.

of defendant "when and if said stock is available for delivery." Plaintiff also agreed to act as watchman of defendant's premises for a compensation of one hundred dollars monthly "payable when the funds are available." June 28, 1941, the receiver made another contract with plaintiff for performance of the assessment work and for services as watchman. This contract also provided for payment "when the funds are available." Plaintiff performed his work pursuant to the agreements.

In June, 1942, the receiver, with approval of the superior court, entered into a written contract with one G. H. Beggs under which Beggs leased the property of defendant for a period of years on a royalty basis and was given an option to buy the property. March 6, 1944, the receiver filed his final report in which reference was made to the contracts with, and the claims of, plaintiff who made written exceptions to the final report and the action of the receiver upon his claims. Hearing was had April 10, 1944, before one of the superior court judges for Spokane county. Plaintiff was present and represented by counsel. Plaintiff testified respecting his claims against receiver, and his counsel argued at length as to the rights of plaintiff under his claims. At that hearing, the questions raised by plaintiff were the amount to which he was entitled under his two agreements with defendant's receiver, and whether the assets in the receivership should be sold to satisfy plaintiff's claims. The court entered an order April 24, 1944, winding up the receivership, overruling plaintiff's objections to the final report, and allowing, in part, the claims of plaintiff. The court determined the amount to which plaintiff was entitled, same to be paid "when the funds are available," and that plaintiff was also entitled to twenty-four thousand shares of defendant's treasury stock which were delivered to and accepted by plaintiff. No appeal was taken by plaintiff from that order.

September 2, 1944, plaintiff commenced this action in the superior court for Okanogan county upon the two contracts described above. His rights under those two contracts were determined in the hearing, final order in which was

entered April 24, 1944. The cause was tried to the court, which concluded that the question raised now by plaintiff respecting his claim is foreclosed by the order entered April 24, 1944, from which he did not appeal. From judgment of dismissal, plaintiff appealed.

■■ An order accepting a receiver's report and ordering his discharge, is a final order and is appealable. *Johnson v. Joslyn,* 47 Wash. 531, 92 Pac. 413. As appellant did not appeal from the final order entered April 24, 1944, he may not now urge as error the court's determination of amount to which he was entitled and that that amount was "payable when the funds are available." Those questions are foreclosed. The matter is *res adjudicata.*

Appellant next contends that the words "when the funds are available" as they appear in the two contracts and in the court's order entered April 24, 1944, do not mean when *money* is available, as the assets of a corporation are a *fund* out of which creditors are to be paid. It is insisted that the court should have ordered a receiver's sale, in which *fund* acquired thereby, the creditors could have participated. It is argued that as the court failed to do this and turned all of the assets in the receiver's hands back to the corporation, a creditor may follow those assets by a proper proceeding in any court having proper jurisdiction.

■ It is true that the assets of a corporation are a *fund* out of which creditors of the corporation are to be paid. It is clear, however, that the word "funds" as it appears in the two contracts and in the court's order, means "money." The physical assets of the corporation, when the contracts were executed and when the court's order was entered, were the same as they are now. The word "available" accentuates the meaning intended by the parties and by the court; it emphasizes the fact that "money" was meant. Had "assets" been meant, the word "available," in the clause "when the funds are available," would not have been used, as the *assets* of the corporation were then available.

The judgment is affirmed.

BEALS, C. J., STEINERT, JEFFERS, and MALLERY, JJ., concur.